In the Matter of Joseph A. Nowicki, Petitioner, against Francis J. Heafy, City Clerk of the City of Yonkers, New York., et al., Respondents.

Supreme Court, Westchester County, February 27, 1943.

*Paul Bleakley, Corporation Counsel,* for respondents.

*Prime Bros. & Duffy* for petitioner.

PATTERSON, J. The petitioner in this proceeding seeks a final order under article 78 of the Civil Practice Act, directing his reinstatement as Deputy City Clerk of the City of Yonkers on the following grounds: 1. That he is an honorably discharged World War veteran and entitled to the protection afforded by section 22 of the Civil Service Law. 2. That his removal was for political reasons, and in violation of section 25 of the Civil Service Law. 3. That he was appointed for a term ending December 31, 1943, and cannot be removed without charges during such term. 4. That his removal was influenced by certain members of the Common Council each of whom, he alleges, is prohibited by provisions of the Supplemental Charter of the City of Yonkers from taking part in any manner in the appointment or removal of officers and employees of the City.

Respondents, instead of filing a return to the petition, make a motion on points of law. This is equivalent to a demurrer to a complaint, and for the purpose of this application every material allegation in the petition must be assumed to be true.

As to the first contention of the petitioner, namely, that he is protected from removal by virtue of his being concededly a discharged World War veteran. Subdivision 1 of section 22 of the Civil Service Law provides that no such person shall be removed from his position of employment except for incompetency or misconduct shown after hearing upon notice. Then it goes on to qualify this by saying: '' Nothing in this subdivision shall be construed to apply to the position of private secretary, cashier or deputy of any official or department.'' This section was obviously intended for the protection of subordinate employees, rather than independent officials, nor does it apply to veterans employed in the unclassified civil service. The legislative power of the City of Yonkers is vested in the Common Council thereof under the provisions of section 30 of the Second Class Cities Law reading in part as follows: '' The legislative power of the city [of Yonkers] is vested in the common council thereof * * *;'' and also under the provisions of section 1 of article XV of the Supplemental Charter of the City of Yonkers (L. 1908, ch. 452, amd. by local law enacted in 1938), which reads: ''All the legislative powers of the city however, conferred upon or possessed by it, are hereby vested in a board to be known as the 'common council of the City of Yonkers'.''

Section 32 of the Second Class Cities Law provides that the Common Council shall choose a clerk to hold office during the term for which its members were elected, unless sooner removed by a vote of three fourths of the members of the Common Council. It further provides that the City Clerk may appoint to hold office during his pleasure a deputy who ''in case of the absence or disability of the city clerk or a vacancy in the office, shall discharge the duties of the office until the city clerk returns, his disability ceases or the vacancy is filled.''

Section 9 of the Public Officers Law provides in part as follows: '' If there is but one deputy, he shall, unless otherwise prescribed by law, possess the powers and perform the duties of his principal during the absence or inability to act of his principal, or during a vacancy in his principal's office.''

It is apparent that the Common Council of the City of Yonkers is a legislative body, and the City Clerk chosen by it is a legislative officer, and under the provisions of section 9 of the Civil Service Law it is provided: '' The unclassified serv-

ice shall comprise * * * all legislative officers and employees."

Subdivision 1 of section 22, as above pointed out, clearly indicates that deputies are specifically excluded from the protection given to veterans. Petitioner is further excluded from the protection given to veterans as the office held by him is in the unclassified civil service of the city of Yonkers.

The second point raised by the petitioner is that his removal was for political reasons, and in violation of section 25 of the Civil Service Law. I think that this section is applicable to and for the protection of only those in the classified service. (See *People ex rel. Garvey* v. *Prendergast*, 148 App. Div. 129.)

Unless the section comprehends both those in the classified and unclassified service, then it matters not whether political considerations motivated the petitioner's discharge. It may well be that politics actuated his dismissal, but it is equally true that politics may have actuated his appointment. As the court said in *People ex rel. Garvey* v. *Prendergast* (*supra,* p. 133): "In a government by parties it is to be expected that the principal executive officers, the heads of departments, whether appointed or elected, and their deputies and secretaries, will be selected with some reference at least to the political opinions and affiliations of the appointees, and it is plain that the Legislature did not intend to direct otherwise. The purpose of creating an exempt class would be defeated if the motives of the appointing officer could be inquired into. The Legislature recognized that it was not practicable to prescribe rules for appointments to, or removals from, certain positions or to determine the qualifications of candidates for such positions by examinations, competitive or otherwise, and so it provided for the creation of an exempt class * * *."

The third point raised by the petitioner is that he was appointed on January 5, 1942, to the post of Deputy City Clerk for the term expiring December 31, 1943, and cannot be removed without charges during such term. I think the City Clerk was without power to fix a term of office for the office of Deputy City Clerk, as the pertinent provision of section 32 of the Second Class Cities Law reads: "He [the City Clerk] may appoint, to hold office during his pleasure, a deputy * * *."

I can see no logic that a City Clerk may appoint a Deputy City Clerk for a specified term where the statute specifically provides that his appointment is only during the pleasure of the appointing power. An appointment " during his pleasure " would seem to negative the idea of an appointment for a fixed term. The City Clerk could not abridge the power of removal

by the appointment of a Deputy City Clerk for a fixed term. Any such attempt to fix a term would be of no effect and without avail.

Lastly, the petitioner argues that his removal was influenced by certain members of the Common Council, each of whom is prohibited by provisions of the Charter of the City of Yonkers from taking part in any manner in the appointment or removal of any officers or employees of the city. The most that can be said for the assumption of such unwarranted influence or activities by members of the Council is that they simply violated the provisions of the City Charter and may be answerable therefor, but certainly they could not compel the removal of the deputy by the City Clerk whose tenure was at his pleasure, and not at the say-so of members of the City Council. The petitioner argues that his removal was not at the pleasure of the City Clerk, but was influenced or coerced by others. The fact of the matter is that he had the right to remove him at his pleasure, and "pleasure" is synonymous with "will." It must be assumed that he exercised his pleasure or will when he removed him, and it was his pleasure or will even if it might have been activated by others. A head of a department who has the right to remove his deputy at pleasure will not be heard to say after he exercised that right that "I was urged to do so by others."

The deputy clerk was not a subordinate. He was rather the *alter ego* of the Clerk. As above shown, he was clothed with fullest authority to discharge all the duties of the office of City Clerk during the disability of the City Clerk, or as the result of a vacancy in that position. He was just what the title of his office implies, a deputy. He held a superior position to either a private secretary or a cashier, although these positions are all grouped in the same provision of immunity by subdivision 1 of section 22 of the Civil Service Law. One who acts in the place and stead of his superior during his absence or disability is presumed to carry out the policies of his chief, and that policy comprehends political policy as well as ministerial or administrative. For a head of a department to have a deputy, who is not of his own choosing or who cannot be removed at his pleasure for failure to cooperate with his policies, would seem to invite inefficiency, lack of continuity, and confusion in the administration of the office, for the proper management of which the head, in the first instance, is held answerable.

I can see no triable issue raised by the petition, and hence it is insufficient in law in that it does not state facts sufficient to constitute grounds for the relief sought, and the motion to dismiss as a matter of law should be granted.