Lawrence H. Cooke, J.
Petitioner has instituted this article 78 (Civ. Prac. Act) proceeding in the nature of mandamus for an order restoring him “ to the rank of Captain in the New York State Police as enjoyed by him on and prior to July 17, 1962.”
Previously, respondent moved to dismiss the petition herein pursuant to section 1293 of the Civil Practice Act, and, at that time, only the petition being considered, said application was denied (35 Misc 2d 816). Thereafter an answer containing affirmative defenses was served on behalf of respondent, to which no reply was interposed, and eventually a hearing was conducted at which the parties stipulated as to certain facts. The briefs which have been submitted assert on behalf of each of the parties that an adequate record is now before the court.
It appears that petitioner joined the State Police in 1929, that 20 years later he was appointed to the permanent rank of lieutenant, that in 1955 he was promoted to the position of captain and that on July 17, 1962 respondent, as Superintendent of the New York State Police, issued an order, without a hearing, relieving petitioner of the command of Troop K effective on that day and reassigning him to his permanent rank of lieutenant as of August 3, 1962.
After respondent notified petitioner of said reassignment as to rank and in response to a letter from one of petitioner’s attorneys requesting a hearing, respondent sent a letter to said attorney dated July 25, 1962 in which such a hearing for petitioner was denied. On the one hand, the letter stated:
“ The Superintendent of State Police has the authority and responsibility of appointment to positions above the rank of Lieutenant in the New York State Police. An appointee to such a position continues to serve in such position at the pleasure of the Superintendent who may terminate the appointment at any *432 time and reassign the appointee to his permanent rank. In accordance with the authority vested in me as Superintendent of State Police, I have relieved Captain Lawson of command of Troop K of the New York State Police and re-assigned him to his permanent rank of Lieutenant.
“ The regulations of the New York State Police provide for this action in my discretion. Captain Lawson, under the regulations, is not entiled to a hearing prior to such discretionary action. These regulations govern his actions as well as mine. The request for a hearing is, therefore, denied.”
But the letter reads on: “ My decision to remove Captain Lawson was predicated on certain administrative delinquencies which clearly reflected Captain Lawson’s inability to function as a Troop Commander. Each of these delinquencies has been previously communicated to Captain' Lawson.” This latter statement is followed by a listing of 15 items as being ‘ ‘ among such delinquencies.”
It is well recognized that the Legislature may, by statutory authority, confer upon a subordinate public board or agency the power to adopt rules and regulations reasonably adapted to carry out the purposes or objects for which it was created and reasonable rules when duly adopted pursuant to such authority have the force and effect of law (Darweger v. Staats, 267 N. Y. 290, 306; Cherubino v. Meenan, 253 N. Y. 462, 463, 466; People ex rel. Jordan v. Martin, 152 N. Y. 311, 316-317; People v. Malmud, 4 A D 2d 86, 91-92; Wirtz v. Lobello, 1 A D 2d 416, 418; Matter of Calfapietra v. Walsh, 183 Misc. 6, 7, affd. 269 App. Div. 734, affd. 294 N. Y. 867; Ivory v. Edwards, 278 App. Div. 359, affd. 304 N. Y. 949). Subdivision 2 of section 215 of the Executive Law contains a provision that the “ superintendent shall make rules and regulations subject to approval by the governor for the discipline and control of the New York state police ” and said statutory authority antedated petitioner’s association with the State Police.
Article 11 of the, “ Regulations of New York State Police ”, entitled “Appointments, assignments and Promotions to Noncompetitive Member Positions ”, was issued by the Superintendent on April 23,1962 and approved by the Governor on May 30, 1962. Section 11.1 thereof lists the position of captain as a noncompetitive member position, said listing of captain as noncompetitive having existed at the time of petitioner’s appointment in 1955 and prior thereto. More pertinently, section 11.13 of said regulations, entitled ‘ ‘ termination oe noncompetitive appointment or assignment ”, issued April' 23, 1962 and approved on May 30, 1962, provides: “ Appointment or assign *433 ment to a noncompetitive position shall be during the pleasure of the Superintendent, except that, where the original appointment as a member was to a noncompetitive position, reduction in rank to a position below that to which appointment was made initially shall be made only after a hearing.” The exception set forth in said section is not applicable to the instant matter in view of the fact that petitioner’s original appointment as a member in 1929 was to a competitive position.
Section 8.41 of said regulations, as in effect on July 17, 1962, reads as follows: “A member of the Division who shall in the performance of his official duties display inaptitude, inadaptability, reluctance to perform properly his assigned duties, or who at any time acts in a manner tending to bring discredit on the Division or fails to assume responsibility or exercise diligence, intelligence and zealousness in the pursuit of his duties or engages in misconduct or neglects his duty may, after a hearing, be deemed incompetent and shall be subject to suspension and/or reduction in rank and/or dismissal from the Division. Neglect of duty or misconduct is prohibited and shall be reported to the Superintendent by any member cognizant thereof. ’ ’ This regulation is practically the same as provided for in previous rules as in effect at the time of petitioner’s elevation to the captaincy and prior thereto.
Hence, we have the contention of respondent that he had the authority at his pleasure to terminate the petitioner’s appointment or assignment to the noncompetitive position of captain pursuant to said section 11.13 and the claim of petitioner that he was entitled to a hearing because of the provisions of section 8.41 of the regulations.
Belief in the nature of mandamus is a drastic remedy, resting in the sound discretion of the court, and should not be granted unless the right to it is clear (Matter of Schulman v. Dejonge & Co., 270 App. Div. 147,149; Matter of Ellsworth, Barrows & Co. v. Ward, 255 App. Div. 91, 92). To say the least, merely because of the existence of section 11.13, petitioner’s right to a hearing, and therefore to relief, is not clear here.
In Matter of Delicati v. Schechter (3 A D 2d 19, 24) the Appellate Division stated:
“In accord with this reasoning was our recent decision in Matter of Nathanson (1 A D 2d 823). In that case, the petition showed that there existed two possible grounds for the commissioner’s action in passing over the name of the petitioner, who was a police eligible. One of the grounds was bad, within the precise holdings of the Maynard and Hamilton cases (supra). The other possible ground was one that would reasonably sup *434 port the commissioner’s action. This court reversed the order of Special Term directing a trial and inquiry into the reasons for police commissioner’s action, and dismissed the petition. That conclusion followed from the basic principle that, so long as there was any reasonable basis for the commissioner’s exercise of discretion, there was no warrant for judicial action. (Cf. Matter of Machiano v. Adams, 286 App. Div. 1007.) # * #
“ Under long-standing principles of law, this court must presume, until the contrary is shown, that public officers vested with discretionary power exercise their power consistent with their fiduciary obligation to their particular governmental unit and to the people in general. By the very act of granting, within constitutional limits, a particular public officer a non-reviewable discretionary power, the Legislature indicates its willingness to accept the risk of unprovable arbitrary action in order to seek the accomplishment of the objectives of the grant of that discretionary power. (Matter of Sheridan v. McElligott, 278 N. Y. 59.) When the Legislature is no longer willing to accept that risk, it may remove the mantle of nonreviewability from administrative action. (Cf. L. 1955, ch. 661, adding subd. 5-a, Civ. Prac. Act, § 1296.) ”
Here, the Superintendent may not have been able to act under section 8.41 without a hearing'; but he could terminate petitioner’s appointment as captain at his pleasure under section 11.13.
In Matter of Nowicki v. Heafy (180 Misc. 184) the court was concerned with the removal of a Deputy City Clerk of a second class city. Referring to the power of appointment of such a deputy by the City Clerk of such a city, section 32 of the Second Class Cities Law then provided and now provides: “ He may appoint, to hold office during his pleasure, a deputy ’ ’. The court held (pp. 187-188): “An appointment ‘ during his pleasure ’ would seem to negative the idea of an appointment for a fixed term. * * * The fact of the matter is that he had the right to remove bim at his pleasure, and ‘ pleasure ’ is synonymous with 6 will ’. It must be assumed that he exercised his pleasure or will when he removed him, and it was his pleasure or will even if it might have been activated by others.”
In Matter of Kropp v. Common Council of City of North Tonawanda (26 Misc 2d 127), a significant decision revealing a pertinent factual situation, there was involved the removal of the Chief Engineer of the Fire Department of North Tonawanda by the Common Council of that city. The court harmonized a section of the city charter which provided that the Chief Engl *435 neer “ shall hold office at the pleasure of the common council ” with two other sections, one providing that the Common Council “ may remove any person so appointed after notice and an opportunity to be heard in his defense ’ ’ and another providing that all officers of the city may be removed for incompetency, misconduct in office or neglect of duty after giving a copy of the charges and an opportunity to be heard, by holding that the former section gives the council the unrestricted right to appoint the official and the latter two give it permissive methods of removal. The court held (p. 131): “ The word ‘ pleasure ’ indicates the intent of the Charter to give the Council unfettered control over appointment to this office.
“ The general rule is that unless the law otherwise provides, if the officer is appointed by a council and no definite term is prescribed, he holds at the will or pleasure of his appointing authority and the power of removal may be exercised at any time by such agency. In such case, the power of removal is regarded as incident to the power of appointment. In brief, the power to appoint carries with it the power to remove. It follows that power of removal may be exercised at any time, without notice, and without the necessity of providing formal procedure therefor. (See Myers v. United States, 272 U. S. 52; People ex rel. Corrigan v. Brooklyn, 149 N. Y. 215; People ex rel. Sims v. Fire Comrs., 73 N. Y. 437; 4 McQuillin, Municipal Corporations [3rd ed.], ch. 12, § 12.249, and Shurtleff v. United States, 189 U. S. 311.) Martin v. Aldermen of Newton (337 Mass. 544) held that appointments at the pleasure of the appointing power may be terminated at any time and without notice. See, also, Jensen v. Independent Consolidated School District No. 85 (160 Minn. 233), which held that the appointing power might discharge a superintendent of schools without notice or hearing where he serves at the ‘ pleasure ’ of the appointing body, even though he was hired for a 36-month term. The court there found that the right of an appointing body to discharge a person serving at its ‘ pleasure ’ 1 is a public right and exists for a public purpose ’. Thus, chief of police of a city who held office at pleasure of the city council could be dismissed by council without cause and without notice or hearing (Hackler v. Ward, 105 Cal. App. 2d 615). We hold therefore that petitioner served at the pleasure of the Council and was lawfully removed by the Council when it exercised its right to appoint a successor.”
If an attempt is made to claim that said section 11.13 of the regulations was not in effect at the time of petitioner’s appointment as captain in 1955, said contention is refuted by the fact that at said time and for many years prior thereto section 215 *436 of the Executive Law and its predecessor, section 94, gave the Superintendent the power to make rules and regulations, subject to the approval of the Governor, for the discipline and control of the State Police. Petitioner accepted his appointment as captain, and even his original appointment as a trooper in 1929, subject to the Superintendent’s statutory authority to make rules and regulations and to amend and add to existing rules and regulations. It is only sensible that the Superintendent should have the authority to author, subject to approval, additions and amendments from time to time, as the necessity might appear. Furthermore, it is important that at any given time that all the members of this far-flung and sizable force be subject to the same rules and regulations. A situation whereby one member of the State Police would be subject to different rules than another, merely because of the various dates when they became associated with the force or were promoted therein, would be most confusing, if not chaotic. Certainly, a police force must operate in an atmosphere of order and not disorder, with a single standard for internal management.
Here the position of captain was and is noncompetitive. It is a well-established rule of law that the power to appoint to an office or position, where the term or tenure is not defined by statute or otherwise, necessarily carries with it the power of removal (People ex rel. Corrigan v. Mayor, etc., 149 N. Y. 215, 223-224; People ex rel. Cline v. Robb, 126 N. Y. 180,182; People ex rel. Sims v. Fire Comrs., 73 N. Y. 437, 441; Matter of Kreppein v. Downs, 272 App. Div. 452, 454; Matter of Shatter v. Moses, 241 App. Div. 485, 487-488, affd. 266 N. Y. 413; Walker Mem. Baptist Church v. Saunders, 173 Misc. 455, 460, affd. 259 App. Div. 1010). Under this basic principle, there being no term or tenure in connection with the position of captain fixed by statute or rule adopted pursuant to statute, the Superintendent has the power of removal from said position.
There being legal and proper bases for the Superintendent’s exercise of authority, there is no warrant or justification for judicial action.
In fairness, it should be stated that the within decision is made without reflection or determination one way or the other as to petitioner and the items of “ delinquency ” set forth in the said letter attached to the petition. They do not constitute the basic issue herein.
Petition dismissed on the merits.