**James M. CATTERSON, Plaintiff,**

v.

**Ralph G. CASO, Robert J. Sweeney and Robert L. Ryan, Defendants.**

77 C 2552.

United States District Court,
E. D. New York.

June 29, 1979.

Arnold B. Firestone, Hauppauge, N.Y., Catterson & Nolan, Port Jefferson, N.Y., for plaintiff.

Edward G. McGabe, County Atty. for Nassau County by Louis Schultz, Mineola, for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

In this action, plaintiff, James M. Catterson, Jr., alleges violations of his rights un-

der the First and Fourteenth Amendments and under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. In addition, plaintiff alleges violations of New York State law. The court's jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

Plaintiff is an attorney and a resident of Suffolk County. He was appointed County Attorney of Nassau County, effective January 1, 1976, by defendant Ralph G. Caso, who at that time was the County Executive of Nassau County. Section 13–1.0 of the Nassau County Administrative Code ("Administrative Code") requires that except under certain circumstances, a county employee must be a resident of Nassau County for one year prior to the date of his appointment.[1] Defendant Caso, pursuant to Section 13–1.0(c), submitted to the Nassau County Civil Service Commission a one year waiver of the residency requirement for plaintiff. The waiver was effective January 1, 1976. On December 30, 1976, plaintiff was notified that his position as County Attorney was terminated effective midnight, December 31, 1976. Plaintiff claims that he was terminated for unlawful reasons.

Assuming for the purposes of this motion that the allegations in plaintiff's complaint are true, in the latter part of 1976 defendant Caso announced that he would seek the Republican nomination to succeed himself as Nassau County Executive when his term of office expired on December 31, 1977. In order to further his candidacy, Caso sought to enlist the support of various Republican Party members and municipal officials, including that of the plaintiff. Caso requested the plaintiff to speak in favor of his candidacy to the Nassau County Republican Chairman. Plaintiff informed Caso that he did not intend to support his candidacy and refused to speak to the Republican chairman in Caso's behalf.

On or about December 23, 1976 defendant Caso directed plaintiff to appoint defendant Robert J. Sweeney to the office of chief deputy county attorney which was to become vacant on December 31, 1976. Plaintiff complied with this directive on December 30, 1976. Subsequently, plaintiff was informed that his position as county attorney was terminated effective at midnight December 31, 1976. Sweeney succeeded plaintiff as county attorney.

Plaintiff contends that he was dismissed from his position without cause and for the sole purpose of punishing him for refusing to support Caso's candidacy. He asserts that his termination was designed to intimidate other public office holders in Nassau County into supporting Caso's candidacy. Plaintiff also contends that defendants Sweeney and Ryan[2] aided and abetted Caso and conspired with him to have plaintiff dismissed from his position.

Plaintiff's complaint charges that he was dismissed in violation of his First and Fourteenth Amendment rights to freely affiliate himself with the candidate of his choice. He also alleges that he was terminated in violation of his right to due process. He

1. § 13–1.0. Officers and employees to be residents.

a. An office or position, compensation for which is payable solely or in part from funds of the county, shall be filled only by a person who is a citizen and bona fide resident and dweller of the county for at least one year.

b. A person who is not a citizen or bona fide resident or dweller of the county for one year may be appointed to an office or position for which peculiar or exceptional qualifications of a scientific, professional or technical character are necessary. In such cases, evidence in writing shall be furnished:

1. That the service or work to be performed cannot be properly performed by any available citizen and resident of the county.

2. That the non-resident person, proposed to be appointed, is generally recognized as one possessing such exceptional qualifications in a high degree.

c. The consent of the county executive shall be obtained before the appointment or employment of such non-residents shall be made. The county executive may require the county civil service commission to pass upon the appointment and certify:

1. Whether it be necessary, and

2. Whether for lack of an available citizen and actual resident the proposed non-resident be competent and necessary.

2. Defendant Robert L. Ryan was Caso's director of communications and a campaign official.

further claims that under state law, the defendants jointly and severally have committed a prima facie tort, libel per se, slander and defamation of character, civil conspiracy, and have violated N.Y. Civil Service Law § 107 and N.Y. Penal Law § 105.05.

Defendants originally moved to dismiss plaintiff's cause of action pursuant to Fed. R.Civ.P. 12(b). Because the court had before it matters outside the pleadings which it wished to consider, it informed the parties that it was treating defendants' motion as one for summary judgment.

*Political Affiliation Claim*

Plaintiff claims that the First and Fourteenth Amendment accorded him the right to support the candidate of his choice for the Republican nomination for the office of Nassau County Executive and that his dismissal solely because of his failure to support defendant Caso for that nomination was in contravention of his constitutional rights. His claim is based on the Supreme Court's decision in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

■ Because *Elrod* was a plurality decision, the holding of the concurring Justices generally has been viewed as the holding of the court. *See Alfaro de Quevedo v. De Jesus Schuck,* 556 F.2d 591 (1st Cir. 1977); *Tanner v. McCall,* 441 F.Supp. 503 (M.D.Fla. 1977); *Ramey v. Harber,* 431 F.Supp. 657 (W.D.Va.1977), *aff'd in part, rev'd in part,* 589 F.2d 753 (4th Cir. 1978). *See generally Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). *But see* Judge Broderick's analysis in *Finkel v. Branti,* 457 F.Supp. 1284, n.9 at 1289–90 (S.D.N.Y.1978), *aff'd,* 598 F.2d 609 (2d Cir. 1979), *cert. granted,* —— U.S. ——, 99 S.Ct. 3095, 60 L.Ed.2d —— (1979), as to why

*Elrod* may be read more broadly than the concurring Justices' holding. The holding of the concurring Justices was that "a non-policymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Elrod v. Burns, supra* 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring).

■ At issue in *Elrod* was the practice of the newly elected sheriff in Cook County, Illinois to replace all non-civil service employees in the sheriff's office who were not members of his own Democratic Party and who were not sponsored by one of the party leaders. The Court found that the patronage dismissals infringed upon the employees' First Amendment right to affiliate themselves with the political party of their choice. However, the Court recognized that the political loyalty of government employees may be necessary in order to avoid a situation where the implementation of an elected administration's policies is obstructed for partisan reasons. In order to balance these conflicting interests, the Court in *Elrod* limited its holding to prohibiting patronage dismissals of nonpolicymaking, non-confidential employees. Those government employees who occupy policymaking or confidential positions may be dismissed for political reasons.

■ It is clear to this court that the First Amendment rights discussed in *Elrod* are broad enough to encompass the right to support the candidate of one's choice without fear of being dismissed for doing so. Therefore, the sole issue before the court with respect to plaintiff's political affiliation claim is whether or not he was a policymaking or confidential employee.[3] The

---

**3.** Defendants have raised an additional issue that the court finds is without merit for the purposes of a motion for summary judgment. They argue that because the one year waiver of the residency requirement executed by Caso for plaintiff expired on December 31, 1976, the retention of plaintiff after that date would have been illegal under § 13–1.0 of the Nassau County Administrative Code. Thus they claim that there was a legitimate, nonpolitical reason for

terminating plaintiff as county attorney. However, if the sole reason plaintiff was dismissed was because of his political preferences, the fact that he could have legally been dismissed for another reason does not vitiate the constitutional violation. *See Elrod v. Burns, supra* 427 U.S. at 360–61, 96 S.Ct. 2673. Because plaintiff has raised an issue of fact with respect to whether the failure to extend the waiver of residency was the result of his refusal to sup-

court finds that the office of Nassau County Attorney is a policymaking, confidential position and, therefore, plaintiff's termination did not violate his First and Fourteenth Amendment rights.

While Mr. Justice Brennan's plurality decision recognizes that "[n]o clear line can be drawn between policymaking and nonpolicymaking positions", *Elrod v. Burns, supra* 427 U.S. at 367, 96 S.Ct. at 2687 it does set forth general guidelines:

> An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

*Id.* at 368, 96 S.Ct. at 2687.

The nature and scope of the responsibilities and duties of the Nassau County Attorney are set forth in Article XI, §§ 1101 [4] and 1102 [5] of the County Government Law of Nassau County ("County Government Law") and in Chapter XI, § 11–3.0 [6] of the Administrative Code. These enactments establish that the Nassau County Attorney has considerable discretion in operating his office. County Government Law § 1101 gives him the authority to appoint "such deputies, officers and employees of his office as may be provided by ordinance." Therefore he has the final say in determining the makeup of his staff.

In addition, the county attorney has broad discretion in exercising his responsibilities. These responsibilities are considerable. The county attorney represents the county, and all its departments, officers, institutions, and agents, in all litigation, draws contracts, ordinances, and resolutions, and acts as legal adviser to the county. And while some of the county attorney's actions are subject to the authoriza-

---

port Caso's candidacy, summary judgment on the basis of the waiver of residency's expiration is not appropriate. *See Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

**4.** § 1101. County attorney; employees. There shall be a county attorney who shall be an attorney admitted to practice law in this state. The county attorney shall appoint such deputies, officers and employees of his office as may be provided by ordinance. Within the appropriation therefor and when authorized by the county executive, the county attorney may employ such special counsel as may be necessary.

**5.** § 1102. General powers and duties. The county attorney shall represent the county and all departments, offices, institutions and agencies thereof, in all litigation, draw all contracts, draw ordinances or resolutions at the request of the county executive or any member of the board of supervisors, and act as legal adviser of the county and all departments, institutions, offices, agencies, or officers thereof, and have such other powers and duties, not inconsistent with the terms of this act, as are now, or may hereafter be, conferred or imposed by law or ordinance. The county attorney upon the request of the governing body of any city, town, village, school district or special district, may act as the legal adviser or representative thereof on such terms as may be agreed upon between the county executive and the said governing body.

**6.** § 11–3.0 Powers and duties.

a. The county attorney or special counsel for the county shall not have the power to institute any action or proceeding on behalf of the county, or any of its officers, except by direction of the board of supervisors or the county executive or an officer, board, commission or body having power or authority under statute to direct the starting of any such action or proceeding.

b. He shall not be empowered to compromise, settle or adjust any rights, claims, demands or causes of action in favor of or against the county unless authorized by the board of supervisors acting by resolution, or by the board, body, commission or officer empowered by statute to direct or consent to such compromise, settlement or adjustment. *However, this prohibition shall not operate to limit or abridge the discretion of the county attorney in regard to the proper conduct of the trial of any proceeding or action at law, or to deprive such county attorney of the powers or privileges ordinarily exercised in the course of litigation by attorneys at law when acting for private clients.* He shall not permit, offer or confess judgment against the county, or accept any offer of judgment in favor of the county, unless previously duly authorized so to do by resolution of the board of supervisors. (emphasis added)

tion and supervision of the county executive and the county board of supervisors, those restrictions do not serve to limit the broad discretion that must necessarily be accorded an attorney representing his client. The court concludes that because plaintiff's responsibilities as county attorney were broad and not well-defined, *see Elrod v. Burns, supra* 427 U.S. at 367–68, 96 S.Ct. 2673, and because he had considerable discretion with regard to the orientation and operation of his office, *see Finkel v. Branti, supra* 457 F.Supp. at 1291, his position was one of a policymaker. Therefore, he could be dismissed for political reasons without violating his First Amendment rights.

■■ Even if the court were not to find that plaintiff occupied a policymaking position, it would find that his dismissal was constitutional. As county attorney, plaintiff stood in a confidential relationship with the officers of the political body whose legal interests he represented. The confidential relationship between an attorney and his client is based on trust. When political differences subverted the personal and intimate relationship that should have existed between plaintiff as county attorney and defendant Caso as the chief executive officer of the county, Caso was justified in dismissing plaintiff. *See Besig v. Friend,* 460 F.Supp. 134 (N.D.Calif.1978) (importance of loyalty and trust between executive and cabinet level officers [7]). Moreover under these circumstances, the important public interest in permitting the county executive, an elected official, to effectively implement his policies outweighed plaintiff's First Amendment rights. *See Newcomb v. Brennan,* 558 F.2d 825 (7th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977) (right of city attorney to dismiss his deputy).

Accordingly, it was constitutionally permissible to dismiss plaintiff from his position as county attorney for political reasons.

*Due Process Claim*

■ Plaintiff's claim that his dismissal deprived him of property without due process of law [8] is without merit. A property interest in employment can be created by contract, by ordinance, or by implied contract. To determine the sufficiency of the claim, the court must look to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Plaintiff has alleged no contractual or implied contractual basis for his claim that he had a property interest in his office as county attorney. County Government Law § 1101 provides no term of office for the county attorney. Plaintiff was appointed by Caso pursuant to County Government Law § 203, which also provides that the county executive may remove his appointees "at his pleasure" and that such decisions shall be final. *See also* N.Y.Const. art. 13, § 2; *Gallagher v. Griffin,* 93 Misc.2d 174, 402 N.Y.S.2d 516 (Sup.Ct., Erie Co. 1978). Under these circumstances, plaintiff cannot be said to have had a sufficient expectation of continued employment to constitute a protected property interest. *Bishop v. Wood, supra; Board of Regents v. Roth, supra; Perry v. Sindermann, supra; Ause v. Regan,* 59 A.D.2d 317, 399 N.Y.S.2d 526 (4th Dep't 1977).

■ In addition, plaintiff has failed to allege that there was a public disclosure of the reasons for his dismissal. In the absence of such a disclosure, a public employee whose position is terminable at the will of his employer may be discharged without a hearing. *Bishop v. Wood, supra* 426 U.S. at 348, 96 S.Ct. 2074. Accordingly, plaintiff's due process claim must be dismissed.

*Section 1985 Claim*

■ Plaintiff alleges in a conclusory manner that the defendants engaged in a

---

**7.** The Nassau County Attorney is a member of the cabinet of the county executive.

**8.** Plaintiff has also alleged parenthetically that his dismissal denied him equal protection of law. However, he has failed to allege with any specificity how he was denied equal protection of law and, taking all his allegations as true, the court fails to find any violation of his rights in this respect.

conspiracy to deprive him of his constitutional rights. Since the court has found that plaintiff's First and Fourteenth Amendment rights were not violated by his dismissal, there would appear to be no basis for his claim that the defendants conspired to deprive him of those rights. In any event,

> plaintiff was bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.

*Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir. 1964). Since he has failed to do this, his conspiracy cause of action must be dismissed. *Id. Cf. Koch v. Yunich,* 533 F.2d 80, 85–86 (2d Cir. 1976); *Fine v. City of New York,* 529 F.2d 70, 73 (2d Cir. 1975).

*State Law Claims*

■ Having found that plaintiff's federal claims must be dismissed, the court need not address his claims brought under state law. However, the court finds it appropriate to exercise its pendent jurisdiction over these claims and finds them to be without merit.

■ Plaintiff argues that defendants violated N.Y. Civil Service Law § 107 [9] when they fired him for political reasons. As the head of the county attorney's office, however, plaintiff was in the unclassified service category of public employees. N.Y. Civil Service Law § 35(e). Section 107 is not applicable to public employees in the unclassified service. *See Bass v. Bragalini,* 286 App.Div. 944, 143 N.Y.S.2d 494 (3d Dep't 1955); *Nowicki v. Heafy,* 180 Misc. 184, 44 N.Y.S.2d 482 (Sup.Ct., Westchester Co. 1943).[10] *Cf. Starr v. Meisser,* 39 A.D.2d 712, 331 N.Y.S.2d 896 (2d Dep't 1972); *Lawson v. Cornelius,* 38 Misc.2d 431, 238 N.Y. S.2d 238 (Sup.Ct., Albany Co. 1963) (Cooke, J.) (public officers such as plaintiff may be dismissed at appointing official's pleasure). Therefore, plaintiff's cause of action under Section 107 must be dismissed.

■ Plaintiff also claims that defendants have violated N.Y. Penal Law § 105.-05 [11]. Since plaintiff has failed to allege that the defendants conspired to engage in conduct constituting a felony of any kind, his complaint must be dismissed for failure to state a claim upon which relief can be granted. In any event, this court is without power to enforce the criminal laws of New York State.

**9.** § 107 provides in pertinent part:

1. Recommendations based on political affiliations. No recommendation or question under the authority of this chapter shall relate to the political opinions or affiliations of any person whatever; and no appointment or selection to or removal from an office or employment within the scope of this chapter or the rules established thereunder, shall be in any manner affected or influenced by such opinions or affiliations. No person in the civil service of the state or of any civil division thereof is for that reason under any obligation to contribute to any political fund or to render any political service, and no person shall be removed or otherwise prejudiced for refusing so to do. No person in the said civil service shall discharge or promote or reduce, or in any manner change the official rank or compensation of any other person in said service, or promise or threaten so to do, for giving or withholding or neglecting to make any contribution of money or service or any other valuable thing for any political purpose. No person in said service shall use his official authority or influences to coerce the political action of any person or body or to interfere with any election.

2. Inquiry concerning political affiliations. No person shall directly or indirectly ask, indicate or transmit orally or in writing the political affiliations of any employee in the civil service of the state or of any civil division thereof or of any person dependent upon or related to such an employee, as a test of fitness for holding office. . . .

**10.** Both decisions were based on N.Y. Civil Service Law § 25, the predecessor of § 107.

**11.** § 105.10 Conspiracy in the second degree.

A person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class B or class C felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct.

Conspiracy in the second degree is a class E felony. (amended Sept. 1, 1978, subsequent to the filing of this action).

Plaintiff's defamation claim is not alleged with sufficient specificity to withstand a motion to dismiss. CPLR 3016(a) requires the plaintiff in a libel and slander action to set forth the particular words complained of. Plaintiff having failed to do so, his defamation cause of action must be dismissed. *See Brandt v. Winchell,* 3 N.Y.2d 628, 636, 170 N.Y.S.2d 828, 835, 148 N.E.2d 160 (1958); *Schwartz v. Andrews,* 50 A.D.2d 1057, 376 N.Y.S.2d 722 (4th Dep't 1975); *Randaccio v. Retail Credit Corp.,* 43 A.D.2d 798, 350 N.Y.S.2d 255 (4th Dep't 1973).

Plaintiff's civil conspiracy cause must also be dismissed because it is not alleged with sufficient specificity.

Plaintiff's cause of action for prima facie tort must also be dismissed. To succeed under this cause of action, plaintiff must establish that defendants intentionally inflicted temporal harm upon plaintiff without justification. The damages sustained by plaintiff must be specially pleaded. *See Appalachian Power Co. v. American Institute of Certified Public Accountants,* 177 F.Supp. 345 (S.D.N.Y.), *aff'd,* 268 F.2d 844 (2d Cir. 1959); *Brandt v. Winchell, supra.* Plaintiff has failed to allege the essential elements for a cause of action under the prima facie tort doctrine. It bears repeating Justice Breitel's words in *Ruza v. Ruza,* 286 App.Div. 767, 769, 146 N.Y.S.2d 808, 810 (1st Dep't 1955), *quoted in Appalachian Power Co. v. American Institute of Certified Public Accountants, supra* : "[A] bad complaint is not made good by the blanket assertion that it relies on the doctrine of 'prima facie tort.'" Accordingly, this cause of action must also be dismissed.

*Conclusion*

For all the aforementioned reasons, plaintiff's complaint is dismissed in its entirety. The Clerk of the court is directed to enter summary judgment in favor of the defendants.

So ordered.